FILED LODGED RECEIVED
MAR 12 2020
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA
BY DEPUTY

The Honorable Theresa L. Fricke

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, Plaintiff, v. JUAN DELGADO, Defendant. | ) | CASE NO. MJ20-5051 **COMPLAINT for VIOLATION 18 U.S.C. § 2251(a), (e)** |

BEFORE, The Honorable Theresa L. Fricke, United States Magistrate Judge, U.S. Courthouse, Tacoma, Washington.

**COUNT 1**

**(Production of Child Pornography)**

Between in or about 2012 and in or about 2018, at Lakewood in Pierce County, within the Western District of Washington, and elsewhere, JUAN DELGADO, employed, used, persuaded, induced, enticed, and coerced a minor to engage in sexually explicit conduct, and attempted to do so, for the purpose of producing a visual depiction of such conduct and transmitting any live visual depiction of such conduct, knowing or having reason to know that such visual depiction would be transported and transmitted using any means and facility of interstate and foreign commerce, such visual depiction

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

was transported and transmitted using any means or facility of interstate and foreign commerce and in and affecting interstate and foreign commerce, and such visual depiction was produced using materials that had been mailed, shipped, and transported in interstate and foreign commerce.

All in violation of Title 18, United States Code, Section 2251(a), (e).

And the Complainant states that this Complaint is based on the following information:

I, Nicole Faivre, being first duly sworn on oath, depose and say:

## I. INTRODUCTION

1. I am an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7). I am currently employed as a Police Detective with the Tacoma Police Department, currently assigned to the Special Assaults Unit, investigating Internet Crimes Against Children. I have been a law enforcement officer for over 15 years. I have investigated and/or participated in investigations involving narcotics smuggling, human trafficking/smuggling, child pornography, and child exploitation. I have a Bachelor of Science Degree in Criminal Justice and Criminology from Metro State University in Denver, Colorado. I completed a 16-week Peace Officer's Standards Training Program in Colorado in 2015, as well as the Washington State Post Equivalency Training program at the Washington State Criminal Justice Training Center in Burien, Washington. I am currently assigned as a Task Force Officer with the Federal Bureau of Investigation's South Sound Child Exploitation Task Force, where my duties include child exploitation and child pornography investigations. I have participated in more than thirty child exploitation or child pornography investigations, and have worked extensively with other investigators on both the state and federal level involved in these types of investigations.

2. As further detailed below, based on my investigation and the investigation of other law enforcement officers, I believe there is probable cause to conclude that

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

JUAN DELGADO, has committed the offense charged in Count 1 of this Complaint—namely, production of child pornography in violation of 18 U.S.C. § 2251(a).

3. The facts set forth in this complaint are based on my own personal knowledge; knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers; review of documents and records related to this investigation; communications with others who have personal knowledge of the events and circumstances described herein; and information gained through my training and experience.

4. Because this complaint is offered for the limited purpose of establishing probable cause, I list only those facts that I believe are necessary to support such a finding. I do not purport to list every fact known to me or others as a result of this investigation.

## II. SUMMARY OF INVESTIGATION

5. On or about June 9, 2019, the social media platform known as Facebook, became aware of several images of suspected child pornography being uploaded onto the internet on or about June 9, 2019, at approximately 8:00:35 p.m. by the Facebook Screen/User Name jdelgadoawesome with the ESP User ID of 100036741066389, Profile URL http://www.facebook.com/jdelgadoawesome, and the verified email address of jdelgadoawesome@gmail.com from the mobile IP address 107.77.205.8. Facebook advised that the file had been sent through the Messenger application and subsequently made a report to the National Center for Missing and Exploited Children (NCMEC), who documented the complaint under Cyber Tip 52250268. The Cyber Tip report was then forwarded to the Seattle Police Department's ICAC Unit for further investigation.

6. According to Facebook, Juan Delgado (DOB XX/XX 1983) was the user of this account. Facebook also reported a verified Facebook Screen/User Name of jdelgadoawesome and the verified email address of jdelgadoawesome@gmail.com. Facebook also advised that they had made several previous Cyber Tips to NCMEC reporting suspected child pornography activity involving this user: Cyber Tip numbers

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

49586844, 50669864, 50902086, 51295760, 51327815, 51442076, 52098936, 52104908, 52117053, 52152054, 52219756, 52219987, 52219988, 52219990, 52249926, and 52250030.

7. Additionally, in the Cyber Tip, Facebook was able to provide additional information about the recipient of the reported content. Within the Cyber Tip, I located 71 additional users who had received the image shared through messenger by jdelgadoawesome. The location data provided by Facebook indicated that the users were from all over the world.

8. I was assigned this investigation in August 2019 and begin reviewing the Cyber Tip information provided by Facebook. From my review of this information, I determined that Facebook user jdelgadoawesome uploaded a total of nine videos and images of apparent child sexual abuse material. These were documented in five different Cyber Tips: 47559430 (four images shared on 03/12/2019), 49547894 (one image shared on 05/11/2019), 52250268 (one image shared on 06/09/2019), 53662066 (two images shared on 05/18/2019), and 53908205 (one image shared on 05/18/2019).

9. I applied for and received a search warrant for subscriber information associated with the telephone number associated with the Cyber Tips above. According to AT&T, the subscriber of that number was Juan Delgado with a service billing address in Lakewood, Washington.

10. In September 2019, I received a response from a Facebook search warrant seeking content associated with the Facebook User(s) associated with the Cyber Tips described above. The responsive material contained 19,945 media files, which I reviewed. Among those, I found several thousand visual depictions of minors engaged in sexually explicit conduct.

11. On September 25, 2019, I learned from U.S. Postal Inspector Kimberly Myhrer that Juan Delgado filed a change of address form indicating his residence would be on N 24th Street in Tacoma, WA.

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

12. Over the next couple of weeks, I conducted physical surveillance on the residence where DELGADO was believed to reside. I was unable to observe the subject coming and going from the residence. I then applied for and was granted an order for Cell Cite Simulator GPS information for the mobile number that was provided by Facebook. The order was granted by Superior Court Judge Karena Kirkendoll on October 30, 2019.

13. The signed order was then provided to the tech detectives with the Tacoma Police Department. Through electronic surveillance, I was able to determine that the GPS coordinates attached to the mobile phone number were geo-locating back to area of the residence at 6911 N. 24th Street.

14. On the morning of October 31, 2019, I noticed that DELGADO's phone was locating in the area of the 5300 block of North Bristol, having left the general area of his residence around approximately 5:13 a.m. The phone continued to stay in the area of 5300 North Bristol throughout the day.

15. Based on the time of the phone's departure from the N. 24th street area and its static location thereafter, I believed it likely DELGADO worked in the area. I conducted physical surveillance on the residence of 6911 N. 24th Street in the afternoon to see if and when DELGADO returned to the residence. At approximately 3:13 p.m., I observed a silver Ford Escape SUV bearing WA license plate BKA4166 pull into the driveway. A female wearing what appeared to be medical style attire exited the driver's side, and I observed DELGADO exit the passenger side of the vehicle. DELGADO was wearing a grey jacket with a bright green shirt underneath. I watched as both the female and DELGADO entered the residence through the front door.

16. On November 4, 2109, I again checked the status of DELGADO's phone and noted it was in the area of his residence until approximately 5:24 a.m. The phone then again showed in the area of 5300 N Bristol for the remainder of the morning and afternoon. Detectives Hoschouer and Welsh assisted with surveillance in the areas of the residence at 6911 N. 24th Street and the area of the Tobey Jones Assisted Living Facility, located at 5340 N Bristol St. in Tacoma, to see if they could physically observe

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

DELGADO leave a place of employment and arrive back at the house. Det. Hoschouer contacted me and advised that he observed a male matching DELGADO's description standing outside by the water fountain on his cell phone, apparently waiting for someone to pick him up.

17. On November 6, 2019, I obtained a search warrant for DELGADO's home and person. Along with a team of other law enforcement officers, I executed those warrants the following day. When police contacted DELGADO, they seized his cell phone, and he was taken to Tacoma Police Department Headquarters for an interview. DELGADO was not handcuffed prior to being transported to the station, and he was advised that he was not under arrest, but being transported for an interview. Detectives noted that DELGADO's cell phone had as its background a photograph of naked minor males. The phone was placed into airplane mode, and brought to me by Det. Welsh; I observed the background/screen saver photo depicted what appeared to be 3 individuals, two of which were white males completely naked with their genitals fully exposed. One of the two males depicted appeared to be between the ages of 8-10 based on his overall size and with the lack of muscular development and the lack of pubic or other body hair.

18. During the search of DELGADO's bedroom, police found approximately 300 photographs (film developed photos from Rite Aid and Wal-Mart) depicting young boys in various stages of dress. Among these, were photos of young boys' exposed genitals. In one of the photos, the camera was zoomed in so close to the child's genitals that all that could be seen were his penis and testicles. It appears from the photo that the photographer's finger is touching the child's penis.

19. According to the detectives who found these photos, it appeared these photos were created by DELGADO. Several of these photos depicted one of two minors (MV1, MV2) that were later identified as the grandsons of DELGADO's roommate, R.C. Other minors depicted were later identified as DELGADO'S relatives.

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

20. Police also seized a number of digital devices from DELGADO's home, including a Nikon Coolpix L320 camera with an SD card. The onsite forensic preview showed that the SD card contained pictures of a prepubescent male's exposed genitals.

21. DELGADO was advised of his constitutional rights from a prepared Tacoma Police Department Advisement form. After being advised of his constitutional rights, DELGADO acknowledged and waived those rights by signing the advisement form. During the interview, I told DELGADO that police had located several photographs of naked boys in his bedroom. He said nothing at first, and I asked him to explain the photographs. DELGADO admitted having the photographs but claimed they were pictures he received from others online. DELGADO said that there were times when people asked him to send them pictures of naked kids, and at first, he denied that he did so. I asked DELGADO about MV1 and MV2. He explained that they were R.C.'s grandchildren. I asked him if he had ever taken naked pictures of them. He responded, "I won't lie, yes I did." In response to a question about what the pictures were of, he said, "their private parts." He explained he took these photos of MV1 and MV2 when he lived at the Royal Oaks Apartments in Lakewood, Washington. DELGADO said he could not remember how many times he took these photos or how old MV1 and MV2 were. He could say only that they were "young," though he said they were old enough to no longer need diapers.

22. DELGADO also acknowledged taking naked photos of his relatives when they were approximately 8, 10, and 12-years-old. DELGADO said he took the photos while they were at a swimming pool in another state.

23. DELGADO also admitted using the internet to search for, receive, and send images depicting minor male children, both naked and engaged in sex acts. He denied ever sharing the images he created with others. When asked where he got the images that he shared online, he said he would use the search engine Google to find pictures, and would use search terms such as, "naked little boys."

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

24. On November 13, 2019, R.C. was interviewed. She said that she had known DELGADO for several years and first met DELGADO when she lived at the Royal Oaks Apartment Complex in Lakewood. R.C. said that DELGADO moved in with her family after his sister was deployed to Germany and she was not able to take him with her and her family.

25. When asked who was currently living in the apartment at the time DELGADO moved in, R.C. stated that it was her, her sister, her daughter, and her oldest grandson, who at the time was approximately 12 years old. I asked R.C. how old DELGADO had been at the time that he moved in, and she said that she was not sure, but thought maybe 20 years old.

26. I asked R.C. about the photos found in DELGADO's bedroom. R.C. said that she had been shown the photos the night of the search warrant and had identified her grandsons. R.C. believed that the photos that DELGADO had of her grandsons had been taken when she still lived at the Royal Oaks residence. She believed that MV1 was approximately 9-10 years old and MV2 was approximately 7 years old.

27. I asked R.C. when MV1 and MV2 had lived with them, and R.C. stated that they did not. Both boys lived with their mother down in Oregon, and they would come up to visit on a regular basis, stating that the last time they had been to visit her was most recently at Halloween this year.

28. I then asked R.C. if I could show her some of the photographs that had been removed from DELGADO's bedroom. Because our video recording units were not working properly in the interview room, I marked the photographs with sticky notes with letters A-H so that I could identify the photographs for the audio recording system. This was done to confirm the identities of MV1 and MV2.

29. In the photograph marked "F" R.C. immediately recognized her older grandson MV1, and stated that this was the same photograph that she had seen at the house during the search warrant. In this photograph, MV1 is sitting on a swing set; he is

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

wearing a white Captain America T-shirt and blue jean shorts. He is also wearing a bracelet on his right wrist.

30. It is believed that MV1 is the same child depicted in the close-up photograph labeled "D," in which all that is able to be seen is the lower half of a male child who was pushing up his T-Shirt with his left hand. The T-Shirt was the same as described in the previous photo, also depicting the same comic book character (Captain America) that MV1 is seen wearing in photograph "F". The child in "D" is wearing the same denim shorts as the child in "F." In "D", the denim shorts are open and the child in is holding his penis in his right hand.

31. The only other photo that R.C. was able to identify was the photograph marked "H." This photograph depicted a Hispanic male child lying on his back with his head resting against what appears to be a black couch cushion. The child is holding a game controller in his right hand, and his left hand is resting between his legs that are bent at the knee, and spread apart. An adult male hand can be seen pulling down the child's shorts to expose the child's penis. R.C. said that this was MV2, and that she believed based on the bedding that this was taken when DELGADO was living in the garage at the Royal Oaks.

32. At the conclusion of the interview, R.C. advised that she had brought with her a bag containing additional items that she and her adult children had found in DELGADO's room when clearing it out after officers had served the search warrant. She explained to me that they no longer wanted DELGADO living with them, and had taken it upon themselves to clear out his belongings. During this time, R.C. said that they found an underwater digital camera, a thumb drive, several photographs of various children, a pair of little boy's underwear that had been wrapped up inside of an old work apron, and six photographs of a local boy scout troop.

33. I applied for and received an additional Superior Court Search Warrant to forensically examine the digital devices that were provided by R.C. I provided these devices to Detective Reda for examination.

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

34. I reviewed Detective Reda's extraction of a 4GB PNY Micro-SD card and found several images that depict MV1 and MV2. In several of the photographs, MV1 and MV2 are shown on the playground set that MV1 was photographed in with his genitalia exposed as described above in both photograph marked as "F" and "D." MV1 is fully clothed in the photographs but wearing the same clothing as he was in the photos where his penis is exposed. The metadata on the photographs show that they were taken with a Nikon Coolpix L320 with a date and time stamp of August 7, 2014, at 1:33:32 PM.

35. This same microSD card contained close-up photos of the genitalia of an unidentified white male child. In one photo, the child appears to be completely naked and is standing on top of the platform of the same playground structure that MV1 was photographed on as described above. The playground structure is clearly visible in the background, and the camera is zoomed in on the child's exposed genitalia. There are two additional pictures of the same child's genitalia in which only the genitalia are visible. Based on what is visible of the child in the three pictures, his size, lack of genital development, absence of pubic hair, pubic hair follicles, and muscular development, I estimate the child's age to be between 5 and 7 years old. The metadata provided in the three photographs show that the photographs were taken with a Nikon Coolpix L320 Camera with date and time stamps of July 16, 2015 at 6:59:49 PM. The micro-SD card that the photographs were extracted from show a manufacturer's stamp indicating it was Made in China. During the search of DELGADO's room, police seized a Nikon Coolpix L320 Camera. That device bears a stamp indicating it was manufactured in China.

36. On December 19, 2019, I received a phone call from SA Jacob McPhie with the FBI Eugene Resident Agency, who was observing the forensic interviews of both MV1 and MV2. During the phone call, SA McPhie advised that MV1's interview had just concluded, and during the interview, MV1 said that DELGADO had taken photographs of his exposed penis. MV1 was also shown the sanitized photographs that had been provided and identified himself on the "playset in Tacoma." MV1 also

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

identified sanitized photographs of himself in the pool locker room at the same apartment complex.

37. I was provided with copies of the recorded interviews of MV1 and MV2. MV1 described how DELGADO tried to watch MV1 and MV2 pee in the bathroom when they were younger. MV1 said once when he and MV2 were swimming at the Royal Oaks Apartment with DELGADO, they needed to use the bathroom. MV1 said DELGADO followed them into the bathroom/changing area of the pool and went to the urinal next to MV1. MV1 said that DELGADO then looked over the top of the divider to try and watch MV1 pee.

38. When asked if MV1 was aware DELGADO took photos of him or MV2, MV1 said that DELGADO always carried a camera. MV1 said he did not think he had ever seen DELGADO without a camera around his neck. When asked about a time that DELGADO photographed MV1, MV1 stated that he remembered being on a playset with his penis exposed. MV1 said he had no memory about the circumstances around that picture.

39. When shown the sanitized pictures provided before the interview, MV1 positively identified himself as the child depicted in the photo on a swing set in the Captain America T-shirt and denim shorts. MV1 also identified MV2 in the photo. MV1 said the swing set was at his grandmother's house. MV1 stated that he did not remember the picture being taken.

40. MV1 was then provided with the second sanitized photograph. MV1 again identified himself. MV1 said he was wearing the same clothes as the swing set photograph. MV1 identified the location of the picture as being in the changing/restroom area of the Royal Oaks Apartment pool, because he recognized the tiles on the floor. MV1 believed DELGADO took this photograph during the same incident when he tried to watch MV1 and MV2 urinate.

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

41. MV1 described another time when DELGADO was with him in the playground area with his camera. MV1 said DELGADO asked MV1 to pull down his pants, but MV1 refused.

42. During MV2's interview he said that on his last trip to his grandmother's Tacoma apartment, he and MV1 were in the garage with DELGADO. DELGADO offered both boys $20 to get naked and lie down on the concrete floor for 15 seconds.

43. When asked about DELGADO taking pictures of him, MV2 said that DELGADO always took pictures with a camera or his phone, and MV2 often wondered if DELGADO took pictures of him while he was sitting on the couch. When asked why he thought this, MV2 said that there were times while on the couch he would look up and notice DELGADO quickly putting his phone away.

44. MV2 was then shown the sanitized photograph in which R.C. identified MV2. MV2 identified himself as the child depicted in the photograph. MV2 said, "I can tell that I am really young, maybe 7." MV2 said that he did not remember the picture being taken, but identified the location as DELGADO's old room. When asked how he knew that it was DELGADO's old room, MV2 said he recognized bedding and a pad that belonged to DELGADO.

45. On February 27, 2020, I went to the Royal Oaks Apartment Complex and located the playground equipment on which MV1 and the other unidentified minor child had been photographed. I noted that the playground structure was the exact same structure depicted in the photographs taken by DELGADO. I photographed the playground structure, as well as the swimming pool for comparison images.

46. Additionally, Detective Reda extracted 403 images (200 deleted) and 7 videos (2 deleted) from one of the twelve SD cards seized during the search. The images and videos were seized off of a Monster SD card. The images were mostly of a child playing in a sprinkler, children and the suspect in a pool, "selfies" of the suspect, and a "selfie" of the suspect with the child from the sprinkler pictures. The videos all appear to

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

be of the child running through the sprinkler and appear to be taken at the Royal Oaks Apartments in Lakewood, Washington. I observed the following two videos:

**DSCF8887.MOV**: This video shows DELGADO approaching a minor playing in the yard. During the video, which appears to be filmed at the Royal Oaks Apartment, DELGADO asked this boy if he could see his penis. The boy refuses but eventually does show DELGADO his penis after DELGADO offered to (and apparently did) show him his penis and offered the boy candy. Based on his small stature and his lack of pubic hair, I estimate this boy is under the age of 8.

**DCF8902.MOV**: This video shows the same child. He tells DELGADO he needs to pee, and DELGADO leads him to an area of bushes where no one will see. Despite assuring the child he will not film him, DELGADO captured a video of the boy peeing, focusing the camera on the boy's penis.

47. Det. Reda noted that both videos were from the DCIM/108_FUJI folder, taken with a Fuji FinePix Digital Camera and the approximate date and time stamps that accompanied the videos were listed as March 30, 2016, at approximately 1:26:40 pm.

48. After viewing the videos, I went back through the hard copy photos taken from DELGADO's collection, and found numerous photographs depicting the same child that he filmed on his camera playing in his underwear in a yard sprinkler. I noticed that it also appeared to be the same child depicted in another photograph where the child is turned to the side and has his penis exposed to the camera, possibly when the child was urinating in the bushes.

49. I then reviewed other SD cards that had been forensically examined by Det. Reda that contained images that appeared to have been taken by DELGADO of minor children, specifically depicting their genitalia.

50. On a 4GB Kodak SD card the extraction reported over 500 images and over 30 videos, though most of the files were duplicates. After sorting, the end result was 180 images (18 deleted files) and 11 videos (4 deleted files.) These images appeared to be family photos including a park and/or some activity center as well as a swimming pool with nude children and close up shots of their genitalia. In addition, there are also images that appear to be taken inside a garage of the same children in various stages of undress.

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

51. I located photographs depicting three children in what appeared to be an inflatable backyard pool. Five of those images were taken underwater of a male child, who is completely naked. The camera is focused on the child's penis and testicles. In one of the five photographs, I can make out the child's belly button, and what appears to be a small brown birth mark just below the navel, on the right side. Based upon the child's overall size, genital development, and the lack of pubic hair or pubic hair follicles, I estimate his age to be between 5-7 years old.

52. Metadata provided during the extraction of the SD card show that the photographs were taken with a FUJIFILM Camera, model FinePix XP90 XP91 XP95. The capture time stamp shows as January 22, 2016, at 09:45:45 AM; the SD card that the photos were extracted from was stamped with a Made in China production stamp.

53. Other photographs on the same SD card show DELGADO posing with three male children in what appears to be a garage. I recognize one of the males from other photographs that I saw in DELGADO's collection; I believe these children to be the nephews that lived either in North Carolina or Texas that DELGADO said he photographed when I interviewed him.

//

//

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

## III. CONCLUSION

Based on the above facts, I believe that there is probable cause to conclude that JUAN DELGADO, committed the offenses charged in this Complaint.

Pursuant to Fed. R. Crim. P. 4.1, this complaint is presented by reliable electronic means.

NICOLE FAIVRE, Complainant,
Detective/Federal Task Force Officer
Tacoma Police Department
Federal Bureau of Investigation

The above-named agent provided a sworn statement attesting to the truth of the contents of the foregoing affidavit on the 12th day of March, 2020. Based on the Complaint and sworn Affidavit the Court hereby finds that there is probable cause to believe the Defendant committed the offenses set forth in the Complaint.

DATED this 12th day of March, 2020.

THERESA L. FRICKE
United States Magistrate Judge

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970